SOUTHERN DISTRICT OF MISSISSIPPI
FILED

OCT -9 2016

ARTHUR JOHNSTON
BY_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

EDDIE A. PENNYPACKER, *et al.*                    **PLAINTIFFS**

**V.**                    **CIVIL ACTION NO. 3:14-cv-262-HTW-LRA**

CITY OF PEARL, *et al.*                    **DEFENDANTS**

### ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before this Court is the Defendants' motion for summary judgment **[Docket no. 36]**. The Defendants argue that the material facts are undisputed, and those undisputed facts demonstrate that the Plaintiffs cannot establish their *prima facie* case for any of their causes of action. The Plaintiffs contend, on the other hand, that the material facts are disputed in the case *sub judice*. Having reviewed the arguments and submissions of the parties, this court is persuaded to deny in part and grant in part the Defendants' motion for summary judgment, finding both that the Plaintiffs have conceded or abandoned some of their claims and that the parties have genuine disputes about the material facts presented by this litigation.

### I.    BACKGROUND

**A.  The Parties**

   *a.   The Plaintiffs*

Plaintiff Eddie Pennypacker (hereinafter individually named "Pennypacker") is an adult resident of the City of Pearl, Mississippi.

Plaintiff Blake Lewis (hereinafter individually named "Lewis") is also an adult resident of the City of Pearl, Mississippi.

1

*b.  The Defendants*

Defendant Melvin Myers (hereinafter individually named "Myers") is an adult resident of the State of Mississippi and employee of the City of Pearl, Mississippi.

Defendant Mayor Brad Rogers[1] (hereinafter individually named "Rogers") is the mayor for the City of Pearl Mississippi.

Defendant City of Pearl (hereinafter individually named "Pearl") is a municipality in the State of Mississippi.[2]

## B.  The Plaintiffs' Statement of Facts

Pennypacker was hired by Pearl in July, 2005. Lewis was employed by Pearl in 2009. Pennypacker and Lewis (hereinafter named collectively "Plaintiffs") allegedly documented the misuse of Pearl's property by Myers for his own personal gain. Myers, a Pearl employee, was the supervisor for the Pearl municipal golf course and the Plaintiffs' direct supervisor.

Plaintiffs allege Myers sent golf course employees on errands for himself while the employees, including Plaintiffs, were supposed to be working for Pearl. Myers, say the Plaintiffs, ordered Pearl municipal golf course employees to take Pearl's property to Myers' personal residence, his deer camp, and to his family members' homes. Further, say the Plaintiffs, Myers had the Plaintiffs load 23 bags of fertilizer, owned by Pearl, into a vehicle, also owned by Pearl, and deliver the fertilizer to Myers' deer camp. Myers, the Plaintiffs continue, also instructed Pearl employees to drive to Muscle Shoals, Alabama, to pick up his personal 4 wheeler ATV.

Plaintiffs further assert that Myers ordered them and other Pearl employees, after hours, to purchase supplies from Ace Hardware in Pearl, Mississippi, and go to Myers' father-in-law's

---

[1] Mayor Rogers was popularly elected by the electors of the City of Pearl, Mississippi for a four (4) year term. *See* MISS. CODE. ANN. § 21-15-1. His first term of office started in 2009.

[2] The City of Pearl is a Mayor-Council form of local government incorporated in 1973 under MISS. CODE ANN. §§ 21-8-1 *et seq.*

house to repair a water line. The Plaintiffs purchased the supplies on Pearl's account at Ace Hardware under the direction of Myers.

Myers would inform Pearl that he was at work for 50 hours a week, when, in actuality, accuse the Plaintiffs, he was at work for only 18 to 24 hours during a normal work week.

The Plaintiffs presented the information they had collected over a period of months on Myers to Alderman Michael Sartor (hereinafter named "Sartor"). Sartor supposedly reviewed the documentation and informed the Plaintiffs that Rogers and Myers were best friends. Allegedly, Sartor cautioned that they probably would be fired upon presenting this evidence to Rogers. Reportedly, Sartor asked the Plaintiffs to continue documenting Myers' misdeeds.

The Plaintiffs then went to Alderman Casey Foy (hereinafter named "Foy") with their accusations. They told Foy they were considering taking their information to Rogers. Foy allegedly instructed the Plaintiffs that since Rogers' administration would not be kind to them and their accusations, instead they should talk with the State of Mississippi Auditor's Office.

Despite the warnings of both Sartor and Foy, the Plaintiffs say that they took their documentation to Rogers. In turn, they say Rogers reviewed the information and gave it to Pearl Police Department Detective Jake Windham (hereinafter named "Windham"). Windham, Myers, and Rogers, according to the Plaintiffs, are childhood friends.

Windham telephoned Pennypacker and asked him to come to the police department to discuss the documentation. When Pennypacker arrived at the Pearl police station, he was taken by an officer to an investigation room. There, Windham and Rogers were waiting for him. During the investigative interview, Rogers became irate and began yelling and pounding his fist on the table says Pennypacker. Rogers reportedly said "Heads were going to roll for this."

Windham allegedly had to remove Rogers from the investigation room. When Rogers and Windham returned to the room, Rogers allegedly apologized to Pennypacker and left.

Subsequently, the Board of Alderman for Pearl spoke with Rogers. According to the Plaintiffs, Rogers told the Board Pennypacker had admitted he knew he was doing something wrong by following Myers' orders and that he knew he should be fired. Pennypacker denies he ever admitted any fault, or that he should be fired.

On Friday, September 13, 2013, the Plaintiffs received a Letter of Intent to Dismiss from Employment signed by Rogers. The letter stated the following specific reasons: the Plaintiffs were at will employees; the Plaintiffs had failed properly to perform duties; the Plaintiffs had committed misconduct; and the Plaintiffs had committed potential criminal acts involving Pearl assets. The letter also informed the Plaintiffs they would have the opportunity for a hearing, which would be held at 9:00 am on September 20, 2013 in the boardroom at city hall.

Contemporaneously, allege the Plaintiffs, Rogers also gave the Plaintiffs a letter of resignation, which he had prepared for the Plaintiffs to sign. He instructed the Plaintiffs, if they signed the letter of resignation, they would not face any further action brought by Pearl against them. Rogers then gave the Plaintiffs a choice of which letter to sign. Both Plaintiffs chose to sign the Letter of Intent to Dismiss and requested the hearing.

At the September 20, 2013 hearing, the Plaintiffs gave the hearing board[3] their version of the pertinent facts. The Plaintiffs denied all the allegations of the termination letter. When the meeting ended, the hearing board affirmed their terminations and informed the Plaintiffs they could appeal the hearing board's decision to Rogers and the Board of Aldermen. The Plaintiffs filed their appeal letter with Pearl's Clerk's Office.

---

[3] Neither party is specific about who the members of the hearing board were.  The Plaintiffs have alleged, however, that Rogers, Windham, and Pearl's City Attorney were present.

The same day the Plaintiffs appealed the decision of the hearing board, the Plaintiffs were arrested by Pearl police officers at their respective homes and charged with felony embezzlement under MISS. CODE. ANN. § 97-11-25.[4] Pennypacker was arrested by Windham. Both Plaintiffs posted bond and were released.

On October 1, 2013, the Plaintiffs met with the Board of Aldermen, Rogers and Windham. After the hearing, the Board of Aldermen, by a vote of three (3) in favor and four (4) against, decided to affirm the decision of the hearing board. The four (4) members who voted against reinstating the Plaintiffs cited Rogers' statement regarding Pennypacker's disputed admission of fault.

The Plaintiffs filed for unemployment insurance with the Mississippi Department of Employment Security and were awarded unemployment benefits, despite the Defendants' efforts to prove alleged misconduct on the part of the Plaintiffs.

The Defendants next submitted to the grand jury the criminal charges that had been filed against the Plaintiffs. The grand jury returned a "no bill," that is "[a] grand jury's notation that insufficient evidence exists for an indictment on a criminal charge." NO BILL, Black's Law Dictionary (10th ed. 2014).

## C. The Defendants' Statement of Facts

Pearl operates a municipal golf course, which is organized into a "pro shop" and "grounds" departments. Pennypacker was hired as the superintendent of the grounds department

---

[4] "If any state officer or any county officer, or an officer in any district or subdivision of a county, or an officer of any city, town or village, or a notary public, or any other person holding any public office or employment, or any executor, administrator or guardian, or any trustee of an express trust, any master or commissioner or receiver, or any attorney at law or solicitor, or any bank or collecting agent, or other person engaged in like public employment, or any other person undertaking to act for others and intrusted by them with business of any kind, or with money, shall unlawfully convert to his own use any money or other valuable thing which comes to his hands or possession by virtue of his office or employment, or shall not, when lawfully required to turn over such money or deliver such thing, immediately do so according to his legal obligation, he shall, on conviction, be committed to the department of corrections for not more than twenty (20) years, or be fined not more than five thousand dollars ($5,000.00)." Miss. Code. Ann. § 97-11-25

in 2005. Lewis was hired as a laborer for the grounds department in 2009 and was later promoted to laborer foreman. Pennypacker was Lewis' supervisor and Myers was the director of the entire municipal golf course. Myers was supposedly the Plaintiffs' friend.

When the Plaintiffs took their alleged documentation of Myers' alleged misdeeds to Sartor, he [Sartor] scheduled a committee meeting of Pearl's golf committee. Both Alderman Johnny McHenry (hereinafter named "McHenry") and Alderman Todd Jenkins (hereinafter named "Jenkins") were the other two members of the golf committee. McHenry notified Rogers before the committee meeting "there were some things going on" at the golf course. Windham was assigned as the investigator. Windham interviewed witnesses and collected documentation regarding the complaint against Myers.

Myers contends he never sent any employees, while they were on the clock, to his father-in-law's house. Myers asserts he asked the Plaintiffs to go, after hours, as his friends, to turn off the water supply to the house, but did not ask the Plaintiffs to fix the water line.

Windham's investigation uncovered no evidence to support the Plaintiffs' claims against Myers. Windham's investigation did uncover evidence that the Plaintiffs purchased supplies on Pearl's account for non-related business. As a result, the Defendants assert, Pearl terminated the Plaintiffs' employment and filed criminal charges against them. The Plaintiffs had a hearing before the Board of Aldermen, requesting that their employment be reinstated, but were denied.

A City of Pearl Municipal Judge issued arrest warrants for the Plaintiffs on September 24, 2013.[5] Subsequently, the criminal charges were submitted to a grand jury which returned a no-bill.

---

[5] Neither party identifies the municipal judge by name. The City of Pearl, Mississippi currently has two municipal judges.

## II.     JURISDICTION

The Defendants filed a notice of removal on March 27, 2014, to this federal forum, [Docket no. 1] asserting that this court has federal question subject matter jurisdiction. Whether a complaint raises a federal question is "determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration...." *Francise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10 (1983).

The Plaintiffs' Complaint alleges various claims under 42 U.S.C. §§ 1983[6] and 1985[7]. Accordingly, this court finds it has federal question subject matter jurisdiction under 28 U.S.C. § 1331[8].

---

[6] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia." 42 U.S.C.A. § 1983 (West).

[7] "(1) Preventing officer from performing duties -- If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) Obstructing justice; intimidating party, witness, or juror -- If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges -- If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person

## III.    CONCESSIONS BY PLAINTIFFS

In the Plaintiffs' Memorandum in Support of their opposition to the motion for summary judgment, the Plaintiffs have expressly conceded various claims of their complaint. [Docket no. 39]. The Plaintiffs have conceded:

- Their 42 U.S.C. § 1985 claim against all defendants [Docket no. 39, P. 10, ¶ C];

- Their COBRA[9] claim against Rogers and Myers, but reserve their claim against Pearl [Docket no. 39, P. 10, ¶ D]; and

- Their wrongful termination claims against Rogers and Myers, but reserve their claim against Pearl [Docket no. 39, P. 11, ¶ E].

Therefore, this court is convinced the Plaintiffs have withdrawn the above mentioned claims from their complaint and grants summary judgment as outlined above.

## IV.    ABANDONED CLAIMS

"Failure to address a claim results in the abandonment thereof." *Sanders v. Sailormen, Inc.*, No. 3:10-CV-00606-CWR, 2012 WL 663021, at *3 (S.D. Miss. Feb. 28, 2012), aff'd, 506 F. App'x 303 (5th Cir. 2013)[10]. This court finds the Defendants raised issues in their motion for

---

as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C.A. § 1985 (West).

[8] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331 (West).

[9] "(a) In general - - The plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan." 29 U.S.C.A. § 1161

[10] Citing *In re Entringer Bakeries, Inc.*, 548 F.3d 344, 347 n. 1 (5th Cir.2008). *Melton v. Lock*, 214 Fed. Appx. 429 * 1 (5th Cir. Jan. 18, 2007) (citing *Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir.1987); *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir.1993)).

summary judgment to which the Plaintiffs did not respond. Therefore, this Court finds the following claims abandoned:

- The Plaintiffs' claim for malicious prosecution[11] against Myers [Docket no. 43, P. 13, ¶ H];

- The Plaintiffs' claim for tortious interference[12] against Pearl [Docket no. 43, P. 15, ¶ J]; and

- The Plaintiffs' claim for tortious interference against Myers [Docket no. 43, P. 15, ¶ K].

- The Plaintiffs' claim for the tort of outrage[13] against Pearl [Docket no. 43, P. 17, ¶ M].

Therefore, this court is convinced the Plaintiffs have abandoned the above-mentioned claims from their complaint and grants summary judgment as outlined above.

---

[11] "To recover, a plaintiff must show (1) the institution of a criminal proceeding; (2) by, or at the instance of, the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceeding; and (6) the plaintiff's suffering of injury or damage as a result of the prosecution." *Strong v. Nicholson*, 580 So. 2d 1288, 1293 (Miss. 1991)

[12] "To establish tortious interference with a contract, the plaintiff must prove the same elements as those required to prove tortious interference with business relations, plus one additional element: malicious interference with a valid and enforceable contract. For tortious interference with business relations to lie in Mississippi, the plaintiff must prove: '(1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual loss and damage resulted.'" *Crabb v. Itawamba Cty., Mississippi, No.* CIV.A. 1:04CV138-P-D, 2005 WL 2648017, at *4 (N.D. Miss. Oct. 17, 2005)(citations omitted).

[13] Intentional infliction of emotional distress is "[t]he Mississippi equivalent of the 'tort of outrage.'" *Bombardier Capital, Inc. v. Royer Homes of Miss., Inc.*, No. CIV.A. 1:04CV884RHW, 2006 WL 1328907, at *3 (S.D. Miss. May 15, 2006).
   "A claim of intentional infliction of emotional distress ("IIED") under Mississippi law requires a defendant's conduct to be 'so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Claiborne v. Mississippi Bd. of Pharmacy*, No. 3:07-CV-277-HTW-LRA, 2011 WL 3684431, at *5 (S.D. Miss. Aug. 22, 2011)

## V.   ARGUMENT

In deciding a motion for summary judgment, this court must consider the dictates of Rule 56 of the Federal Rules of Civil Procedure.[14]

> [T]his court should grant a motion for summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir.2007). A fact is material if "it might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To determine whether a genuine dispute exists as to any material fact, the court must consider "all of the evidence in the record but refrain from making any credibility determinations or weighing the evidence." *Turner*, 476 F.3d at 343 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). While the court must make all reasonable inferences in favor of the non-moving party, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.' " *Reeves,* 530 U.S. at 150, 120 S.Ct. 2097 (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)).

*Cruz v. Mississippi Dep't of Human Servs.*, 9 F. Supp. 3d 668, 679 (S.D. Miss. 2014).

This court finds that this lawsuit features genuine disputes about many of the material facts. Further, this court does not find that any of the submissions of the parties allow this court to dismiss any of the claims not already dismissed *supra* as a matter of law. Therefore, the remainder of the Defendant's motion for summary judgment is denied. [Docket no. 36].

## VI.   CONCLUSION

Based upon the foregoing, this court is persuaded to GRANT in part and DENY in part the Defendants' Motion for Summary Judgment **[Docket no. 36]**.

The Plaintiffs have CONCEDED their claims as follows: their 42 U.S.C. § 1985 claim against all defendants; their COBRA claim against Rogers and Myers; and their wrongful

---

[14] "(a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56

termination claims against Rogers and Myers. Therefore this Court GRANTS the Defendants'
Motion for Summary Judgment as to the aforementioned claims. **[Docket No. 26]**.

This Court finds the Plaintiffs have ABANDONED their claims as follows: their
malicious prosecution claim against Myers; their tortious interference claim against Pearl; their
tortious interference claim against Myers; and their tort of outrage claim against Pearl.
Therefore, this Court GRANTS the Defendants' Motion for Summary Judgment as to the
aforementioned claims. **[Docket No. 26]**.

The material facts of this case, as above stated, are in dispute, thus preventing this Court
from granting judgment as a matter of law on the remainder of the claims alleged by the
Plaintiffs against the Defendants and therefore, DENIES the Defendants' Motion for Summary
Judgment on said claims. **[Docket No. 26]**.

**SO ORDERED, this the** ___9th___ **day of October, 2016**

_____
**UNITED STATES DISTRICT COURT JUDGE**