

Louisiana | Mississippi | Texas | Florida | Alabama | North Carolina | London

G. TODD BUTLER
(601) 360-9366
butlert@phelps.com

May 7, 2018

04969-1100

**VIA ELECTRONIC FILING**

District Judge Louis Guirola, Jr.
United States District Court
2012 15th Street, Suite 814
Gulfport, Mississippi 39501

    Re:    *Pennypacker v. Rogers*
               Civil Action No. 3:14-cv-00262(G)(W)

Dear Judge Guirola:

At the pre-trial conference, the Court requested supplemental letter briefs on the question of whether Plaintiff Eddie Pennypacker, who was an at-will public employee, could possibly prevail on his tortious interference claim. Defendant Brad Rogers' position is that he cannot. Although "at-will employment can be the basis of a tortious interference" claim in theory, *Coleman v. Miss. Dept. of Marine Res.*, 2017 WL 4012682, *7 (S.D. Miss. 2017) (Guirola, J.) (cited case omitted), Pennypacker cannot possibly win on the claim in this case.

**The Third-Party Requirement**

A necessary requirement for tortious interference is that the defendant be a "third party" to the employment relationship. *Coleman*, 2017 WL 4012682 at *7. This Court originally held that Rogers was not a third party based on *Gray v. City of Gautier*, 2012 WL 3913053, *8 (S.D. Miss. 2012) (holding that a city manager was not a third party), Doc. No. 70 at p.22, but later reconsidered that ruling based on the Fifth Circuit's unpublished decision in *Vaughn v. Carlock Nissan of Tupelo, Inc.*, 553 Fed. App'x 438, 445 (5th Cir. 2014) (holding that a car dealership supervisor was a third party), Doc. No. 78 at pp.2-4.

A determinative difference between this case and *Vaughn* is Pennypacker's status as a public employee. Municipalities, of course, act through the conduct of elected officials. *Wilson v. United States*, 221 U.S. 361, 377 (1911). By state statute, Rogers was charged with making employment recommendations to the Board of Aldermen. *See* Op. Att'y Gen. No. 2010-00113 (Miss. A.G. 2010), 2010 WL 1556693, *1 (explaining that, under the Mississippi Code, "the mayor may make recommendations to the board regarding employment decisions"). Rogers cannot be held liable on a Mississippi common law cause of action for engaging in an act sanctioned by a Mississippi statute. Put simply, the question of "third party" status turns on the defendant's authority to act, not the defendant's motive.

— COUNSELORS AT LAW —
4270 I-55 North | Jackson, Mississippi 39211-6391 | Post Office Box 16114 | Jackson, Mississippi 39236-6114
601-352-2300 | 601-360-9777 Fax | phelpsdunbar.com

PD.23634512.1

The Fifth Circuit applied this rule in *Harris v. Pontotoc County School District*, 635 F.3d 685, 693 (5th Cir. 2011).[1] Like here, the plaintiff accused the defendant of possessing a bad motive – in particular, the plaintiff alleged that the school superintendent fired her because she questioned the superintendent's disciplinary actions and because she threatened to sue him. *Harris*, 635 F.3d at 693. Writing through former Mississippi Court of Appeals Judge Leslie Southwick, the Fifth Circuit did not question the superintendent's intent. *Id*. All that mattered was whether the defendant acted within "the scope of his authority" as superintendent. *Id*.

Such reasoning is consistent with how tortious interference operates in other states. In one example, *Diederich v. Yarnevich*, 196 P.3d 411, 418-19 (Kan. Ct. App. 2008), the court held that directors of a corporation who fired the plaintiff were not third parties to the employment relationship. Notwithstanding the plaintiff's evidence that the directors acted with a bad motive, the court reasoned that the question of third-party status focused solely on whether the defendants' possessed authority to act. *See Diederich*, 196 P.3d at 419 (explaining that the plaintiff's evidence about intent did not show that "[d]efendants were acting outside their authority as directors of the corporation in terminating [the plaintiff's] employment"). Likewise, in *Walker v. City of Homerville*, 2014 WL 519621, *7 (M.D. Ga. 2014), the court rejected a tortious interference claim against various municipal officials, including a mayor. The court reasoned that, so long as the defendants "had the authority" to engage in the conduct the plaintiff complained about, they could not be considered third parties to the employment relationship. *See Walker*, 2014 WL 519621 at *7.

Confusion in Mississippi's case law has resulted from intermingling the concepts of "third party" status and "intent." If an elected mayor makes a recommendation pursuant to his statutory authority, then he necessarily is not a "third party" to the employment relationship, and a court need not ever consider the issue of motive. Any contrary conclusion would lead to absurd results under both state and federal law.[2]

In terms of state law, Mississippi Code § 21-3-5 provides that public employees serve "at the pleasure of the governing authorities and may be discharged by such governing authorities at any time . . . without cause." Under that same statute, it is "the mayor and board of aldermen

---

[1]  Whatever might be said about the Fifth Circuit's interpretation of Mississippi law in the unpublished *Vaughn* case, *Harris* is a binding, published case that controls the analysis. *See e.g., Mygsa v. Howard Indus., Inc.*, 879 F. Supp. 624, 627 (S.D. Miss. 1995) ("[T]his Court is bound to follow the Fifth Circuit interpretation of state law.").

[2]  Texas has done a much better job than Mississippi of clarifying this "authority" principle. Texas courts have explained that an agent of an employer cannot be held to have without authority unless the employer complains about the agent's actions. *E.g., Alviar v. Lillard*, 854 F.3d 286 (5th Cir. 2017) (discussing Texas law). In other words, if the employer objects to its agent's conduct, then and only then can courts inquire into whether the agent acted in "bad faith." *Id*. This makes perfect sense because, again, entities necessarily must speak and act through their agents. *See Wilson*, 221 U.S. at 377.

Mississippi law should be interpreted in the same manner, since, in the case where Mississippi first recognized a cause of action for tortious interference with at-will employment, *Levens v. Campbell*, 733 So.2d 753, 760 (Miss. 1999), the Mississippi Supreme Court based its decision on Texas' recognition of the same cause of action. Also, as explained later, the Mississippi Supreme Court has looked to Texas law in adopting proximate cause as an "implicit" element of tortious interference. *See Scruggs v. Merkel & Cocke, P.A.*, 910 So.2d 1093, 1099 (Miss. 2005).

[who] have the power and authority to appoint . . . officers and employees as may be necessary[.]" Miss. Code § 21-3-5. If a plaintiff could avoid the consequence of at-will employment by claiming that a mayor acting pursuant to his statutory authority had a bad motive, then it would nullify the "without cause" standard found in § 21-3-5.

In terms of federal law, there would be a similar anomaly. A public employee does not have a protected property interest under federal law unless, for example, there is a contract forbidding the employee from being terminated without "just cause." *E.g., Henderson v. Sotelo*, 761 F.3d 1093, 1096 (5th Cir. 1985). If a court inquires into whether a statutorily-authorized recommendation was made "in bad faith," then the court necessarily has bestowed a property interest upon the at-will public employee that would not otherwise exist unless the employee possesses a contract.

These illogical consequences raise serious separation of powers concerns. The Mississippi Supreme Court has been adamant that courts should not infer common law rights that have never been enacted by the Mississippi Legislature. *E.g., Kelly v. Mississippi Valley Gas Co.*, 397 So. 2d 874, 875 (Miss. 1981) (explaining that common law claims should not be created in "the absence of [an] explicit statutory provision of a civil remedy"); *see also Presley v. Mississippi State Highway Commission*, 608 So. 2d 1288, 1295 (Miss. 1992) ("[C]ourts declare and enforce the law, but they do not make the law.") (cleaned up). And that principle is even stronger when, as here, there is a statute showing that the Mississippi Legislature intended the exact opposite result. *See* Miss. Code § 21-3-5 (providing that the mayor and board of aldermen possess the authority to appoint public employees and that such employees may be discharged "without cause").

The bottom line is that Rogers possessed authority under state law to make employment recommendations to the Board of Aldermen. He was, to be sure, the person with "superintending control of all the offices and affairs of the municipality[.]" *See* Miss. Code § 21-3-15. Because Rogers was not a third party to the employment relationship between Pennypacker and the City of Pearl, he cannot possibly be held liable for tortious interference.

## **The Without Right or Justifiable Cause Requirement**

Even if Rogers could properly be characterized as a third party, it still would be impermissible to inquire into his motives. To ultimately prevail, Pennypacker must prove that Rogers acted without right or justifiable cause for the unlawful purpose of causing damage and loss to Pennypacker. *See Biglane v. Under The Hill Corp.*, 949 So.2d 9, 16 (Miss. 2007). This requirement cannot possibly be met in this case.

The dispositive point, again, is the authority granted to Rogers by Mississippi statute. As explained previously, § 21-3-15 vested "superintending control of all the offices and affairs of the municipality" in Rogers. Likewise, § 21-3-5 vested "the power and authority to appoint . . . officers and employees" with "the mayor and board of aldermen[.]" These statutes conferred upon Rogers "the legal right" to make employment recommendations to the Board of Aldermen. *See* Op. Att'y Gen. No. 2010-00113, 2010 WL 1556693 at *1.

Given that Rogers possessed "the right" to make the recommendation, it is impermissible to consider Rogers' intent, i.e. whether his recommendation was made with "justifiable cause."

Stated differently, this element of tortious interference asks whether Rogers had either "the right" to make the recommendation or whether Rogers had "justifiable cause" to make the recommendation. One is sufficient for Rogers to prevail; he need not have both. *See* A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 12, p. 116 (2012) ("Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives. Competent users of the language rarely hesitate over their meaning.") (emphasis in original).

This principle was applied by the Fifth Circuit in *Jones v. Norfolk Southern Company*, 348 Fed. App'x 970, 973-74 (5th Cir. 2009), which relied on the Mississippi Supreme Court's decision in *Ewing v. Adams*, 573 So.2d 1364 (Miss. 1990). In *Jones*, the Fifth Circuit rejected the plaintiff's tortious interference claim. 348 Fed. App'x at 973-74. Citing *Ewing*, the court held that, "whatever [underlying] motivations" there might have been, there could be no tortious interference due to the legal justification authorizing the action. *Id*. at 974.

Courts have since followed *Jones* without reservation. *E.g., Graham v. Wal-Mart Stores, Inc.*, 2013 WL 3944281, *2-3 (N.D. Miss. 2013) (explaining that "it is irrelevant what motivation" the defendant may have possessed). And the concept is embodied in Mississippi's legal treatises as well. *E.g.,* MISSISSIPPI LAW OF TORTS § 17:1 (2d ed. (explaining that, "even where the defendant intends [] harm[,]" there can be no liability if "lawful and proper means" support the action).

Allowing a jury to consider Roger's motives would not only be incompatible with the just-discussed precedents but also would raise the same concerns highlighted in the prior section analyzing the third-party requirement. Specifically, such an inquiry would dismantle the at-will employment doctrine that governs public employment under state law, *see* § 21-3-5, and, at the same time, create a never-before-recognized property interest under federal law, *see, e.g., Henderson*, 761 F.3d at 1096. The doctrine of separation of powers does not permit that result. *E.g., Kelly*, 397 So. 2d at 875; *Presley*, 608 So. 2d at 1295.

**The Bad Faith Requirement**

Even if it were permissible to inquire into Rogers' motives, Pennypacker still cannot prevail. The allegations against Rogers are that he initiated an investigation and later encouraged the Board of Aldermen to terminate Pennypacker after the investigation concluded. Such conduct, as a matter of law, does not constitute "bad faith."

Consider the case of *Justice v. Renasant Bank*, 2016 WL 6635638 (N.D. Miss. 2016). Similar to the facts of this case, the plaintiff in *Justice* alleged that her supervisor "investigated [a] suspicious loan transaction involving her sister" and "ultimately recommended that [her] employment [ ] be terminated." *See Justice*, 2016 WL 6635638 at 7. Judge Biggers concluded that initiating an investigation "does not constitute bad faith." *Id*. Instead, it constitutes "simply doing [one's] job[.]" *Id*. Judge Biggers similarly concluded that the termination recommendation did not constitute bad faith because other individuals were involved in the decision and agreed with the supervisor's assessment. *Id*. This same reasoning applies here.

**The Causation Requirement**

Even if Rogers could be deemed to have lacked authority to recommend Pennypacker's termination, and even if Rogers could be deemed to have acted in bad faith, Pennypacker still cannot prevail. The Mississippi Supreme Court has adopted the following requirement as an "additional element" for proving tortious interference: "a showing that the defendant's acts were the proximate cause of the loss or damage suffered by the plaintiff."[3] *Scruggs v. Merkel & Cocke, P.A.*, 910 So.2d 1093, 1099 (Miss. 2005). To satisfy the proximate cause requirement, Pennypacker would have to prove that Rogers' actions were the "but for" cause of his termination. *See, e.g., Coleman & Coleman Enter., Inc. v. Waller Funeral Home*, 106 S.3d 309, 316 (Miss. 2012) (explaining that the plaintiff was required to "prove that the contract would have been performed but for [the defendant's] interference") (emphasis added). Pennypacker cannot overcome the proximate cause requirement in this case.

It is undisputed that Pennypacker's employment with the City of Pearl ended following a four-to-three vote by the Board of Aldermen. Doc. No. 65 at p.5; *see also* Pre-Trial Order, Doc. No. 95 at p.5 (stipulating that "[t]he Board of Aldermen voted to end Pennypacker's employment with the City of Pearl by a 4-to-3 vote"). It was thus the Board's vote, and not Rogers' recommendation, that was the proximate cause of the termination. *See, e.g, City of New Albany v. Barkley*, 510 So.2d 805, 807 (Miss. 1987) (explaining that a plaintiff's "injury must have been the direct result of the" defendant's conduct) (emphasis added).

Throughout this case, Pennypacker has advanced a "cat's paw" theory of causation with respect to his termination, i.e. he has argued that Rogers influenced the four Board members who voted to end his employment. Doc. No. 65 at p.9 ("Defendants are still liable as Defendant Mayor Rogers [was] the cat's paw that clearly cause the[ ] termination[ ]."). But Pennypacker's claim is a non-starter because Mississippi has never endorsed the cat's paw theory. *See Sanford v. Jacobs Tech., Inc.*, 2016 WL 320967, *4 (S.D. Miss. 2016) (Guirola, J.). For this reason alone, he cannot satisfy the proximate cause requirement. *E.g., Perttunen v. City of Livonia*, 2018 WL 1308291, *4 (Mich. Ct. App. Mar. 13, 2018) ("The theory has not been formally adopted by the courts of this State and fails for that reason alone.").

It would be quite odd to inject the cat's paw theory into Mississippi law, where the State has chosen to take a "very narrow" stance on employment liability. *See, e.g., Jones v. Fluor Daniel Servs. Corp.*, 959 So.2d 1044, 1047 (Miss. 2007). It would be odder still to use the theory to hold an individual liable, since, even in the federal context where the theory has been recognized, it is a vehicle for establishing "employer liability" under agency-based statutes like Title VII and not a theory for establishing individual liability. *See, e.g., Brown v. N. Panola Sch. Dist.*, 420 Fed. App'x 399, 400 (5th Cir. 2011) ("While this matter was pending on appeal, the Supreme Court decided *Staub v. Proctor Hospital*, 131 S.Ct. 1186 (2011), which addresses the so-called 'cat's paw' theory of employer liability regarding actions by supervisors.") (emphasis added).

Nonetheless, even if Mississippi were to recognize the cat's paw theory, Roger's conduct could not possibly fall within it's parameters. The cat's paw theory requires the final decision-

---

[3] This Court acknowledged the causation element in *Easterling v. VT Halter Marine, Inc.*, 2016 WL 2757759, *2 (S.D. Miss. 2016).

maker – in this case the Board of Aldermen – to have blindly followed a biased recommendation without use of independent judgment. *See, e.g., Didier v. Abbott Lab.*, 614 Fed. App'x 366, 377 (10th Cir. 2015) (explaining that the cat's paw theory requires more than "influence or input in the decisionmaking process"). The undisputed evidence in this case shows that, prior to voting on Pennypacker's termination, the Board of Aldermen considered the following: (1) testimony from Pennypacker himself, where he informed the Board that Rogers' claims were "not accurate[;]" (2) testimony from the City Attorney; and (3) testimony from the Detective who interviewed numerous witnesses and collected extensive documentation. Doc. No. 61-3 at p.116; Doc. No. 67 at Ex. A. Given the Board of Aldermen's consideration of these alternative sources, the law does not permit a finding that the Board of Aldermen "blindly credited" Rogers' recommendation.[4] *See e.g., Boston v. Taconic Mgmt. LLC*, 2016 WL 5719751, *8 (S.D. N.Y. 2016) (rejecting cat's paw theory of causation); *see also Ellison v. St. Joseph's/Candler Health Sys., Inc.*, 2018 WL 651341, *5 n.3 (S.D. Ga. 2018) ("[A] party can only rely on a cat's paw theory of liability when a [decisionmaker] has failed to conduct an independent evaluation and, instead, merely relied on the recommendation from the biased employee"); *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1294 (10th Cir. 2013) (explaining that a "necessary element" for the cat's paw theory "is the decisionmaker's uncritical reliance on facts provided by a biased supervisor").

\* \* \* \*

There are many reasons why Pennypacker will not be able to prevail on his tortious interference claim. Rogers does not qualify as the type of defendant who can be liable for tortious interference, and, even if he did, the undisputed evidence would not allow the imposition of liability in this case. It would benefit the parties for this Court to reassess this claim in advance of the June 4, 2018 trial. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (explaining that Rule 54(b) permits district courts to reconsider a denial of summary judgment for any reason prior to final judgment); *see also* Doc. No. 78 at p.2.

**PHELPS DUNBAR LLP**

*/s/ G. Todd Butler*

G. Todd Butler

---

[4] Buttressing the point further is the fact that the final decisionmaker in this case was a multi-member board of elected officials as opposed to a single person. The Fifth Circuit has long emphasized that "collective decision-making is less susceptible to influence by an individual with a [unlawful] motive." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 806 n. 2 (5th Cir. 2007).